## Case No. 11,551.

In re RANDALL et al.

[1 Deady, 557; [1] 2 Am. Law T. Rep. Bankr. 69; 3 N. B. R. 18 (Quarto, 4); 1 Chi. Leg. News, 209.]

District Court, D. Oregon. Feb. 28, 1869.

BANKRUPTCY—PETITION— DETAILS — ALLEGATIONS —INSOLVENCY—ACTS OF BANKRUPTCY —ASSIGNMENT.

1. The facts concerning an alleged act of bankruptcy should be stated in the petition with such certainty and detail, as to inform the debtor of what he is required to make proof or explanation, as provided in section 41 of the act [of 1867 (14 Stat. 537)].

[Cited in Re Price, Case No. 11,411; Re Hadley, Id. 5,894.]

2. An allegation in a petition that the debtor being a trader, stopped payment of his commercial paper within a period of fourteen days, is too indefinite to put the burden of proof upon the debtor concerning such alleged stoppage, and may be disregarded as immaterial.

[Cited in Re Ryan, Case No. 12,183.]

3. An insolvent is one who is unable to pay his debts in full at once, or as they become due.

[Cited in Re Walton, Case No. 17,130; Re Oregon Bulletin Printing & Publishing Co., Id. 10,559.]

4. An assignment of his property by an insolvent person for the purpose of having the same distributed among his creditors, is presumed to have been done with intent to defraud the operation of the bankrupt act, by preventing such property from coming to the assignee in bankruptcy, and being distributed under the act, and is therefore an act of bankruptcy.

[Cited in Re Ryan, Case No. 12,183; Catlin v. Hoffman, Id. 2,521; Martin v. Toof, Id. 9,167; Re Marter, Id. 9,143; Re Seeley, Id. 12,628.]

5. An assignment by a solvent person of all his property to a trustee for the equal benefit of the creditors, is an act of bankruptcy, because it hinders and delays creditors in the collection of their debts, and for the same reason it is void under the statute of frauds.

[Cited in Globe Ins. Co. v. Cleveland Ins. Co., Case No. 5,486.]

In bankruptcy.

Mr. Friedenrich and Lansing Stout, for petitioners.

David Logan and Joseph N. Dolph, for respondents.

DEADY, District Judge. On January 30, 1869, a petition was filed in this court by Einshein Brothers & Co., of San Francisco, against the firm of E. G. Randall and John Sunderland of this city, praying that said firm might be adjudged bankrupt, for the causes therein specified. An order to show cause was issued and made returnable February 13; at the same time an injunction was allowed against R. and S., and their assignee, John R. Foster, restraining them from interfering with or disposing of the goods, etc., of the firm. On the return day of the order to show cause, R. and S. appeared by counsel and filed an answer to the petition. At the same time by consent of counsel, the case was set down for hearing by the court, at a future day. On February 20, the court heard the testimony in the case and the argument of counsel, and took the matter under consideration.

The petition alleges the commission of three distinct acts of bankruptcy by R. and S.: (1) That R. and S. within six calendar months next preceding the date of the petition—in January, 1869—did make an assignment, sale and transfer of all their stock in trade, store fixtures and accounts—the same being all the property of R. and S.—to one John Foster, with intent to delay or hinder or defraud the creditors of them, the said R. and S. (2) That R. and S. within the period aforesaid, in contemplation of insolvency, did

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

voluntarily assign, transfer, and convey all of their property consisting as aforesaid, to one John R. Foster—the said Foster having reasonable cause then and there to believe that R. and S. were acting in contemplation of insolvency; and that said assignment, etc., was made with intent to prevent their property from coming to their assignee in bankruptcy, and to prevent the same from being distributed under the bankrupt act, and to defeat the object, and evade the provisions thereof. (3) That R. and S. within the period aforesaid, being merchants and traders at Portland on Wallamet, in the district aforesaid, fraudulently stopped payment of their commercial paper, within the period of fourteen days.

The answer of R. and S. tacitly admits the existence of the debt of the petitioning creditors—$6,183.56—and that it is provable in bankruptcy; and that they assigned all their property to Foster, but denies that such assignment was made in contemplation of insolvency, or with the fraudulent or illegal intents alleged in the petition or either of them. The answer also denies that R. and S. stopped payment of their commercial paper, or that they were insolvent or contemplated insolvency. On the trial Sunderland and Foster were examined as witnesses, but Randall not. No evidence was offered touching the third alleged act of bankruptcy.

Section 41 of the act, which provides for "a trial, to ascertain the fact of such alleged bankruptcy," declares, that if upon such trial "the debtor proves to the satisfaction of the court * * * that the facts set forth in the petition are not true * * * the proceedings shall be dismissed, and the respondent shall recover costs." The effect of this provision is to throw the burden of proof upon the respondents, and a denial of the facts in the petition by the answer of the respondents, does not shift this burden upon the petitioner. No other or less effect can be given to the language of section 41, requiring the debtor to prove that the facts set forth in the petition are not true. But it seems to me, on the other hand, that justice to the debtor, requires that the facts to be disproved by him, should be stated with such certainty and detail as to inform him of what he is to make an explanation or proof. A general statement in a petition that a debtor in January, 1869, stopped payment of his commercial paper for the period of fourteen days, is not, in my judgment, such an allegation of fact, as will warrant an adjudication of bankruptcy against the debtor, unless he disproves or explains it. In answer to this it may be said that the allegation concerning the commercial paper is in the language of form 54. But it should be remembered that the various statements of acts of bankruptcy, given in form 54, are mere outlines or skeleton statements, to be filled in with the particular circumstances of the case in question, and such is the direction given in the nota bene near the

end of the form. This allegation should state as nearly as possible the date of the promissory note or bill of exchange, of which payment had been stopped—to whom made, and for what amount, and when payable, and whether the debtor was liable thereon as maker or indorser, and by whom the same was held when payment was neglected or refused. Again, it may be said that if the allegation was not sufficiently distinct, the respondents should have declined to answer it on that ground, and asked that it be made more definite and certain or stricken out. This, I suppose, would be the better practice, particularly when there is an attempt to state a particular stoppage or suspension of payment, and the same is stated defectively or insufficiently. But when the allegation is a general one—that the debtor stopped payment of his commercial paper—without containing any particular fact or facts pointing to any particular paper, in my opinion, as to this, there are no "facts set forth in the petition," which the debtor is required to prove not true to prevent being adjudged a bankrupt thereon.

Before proceeding to consider the second act of bankruptcy set forth in the petition it will be necessary to state the evidence or the facts established by it, which is done as follows:

1. That from August, 1868, to Jan. 9, 1869, R. and S. were engaged as partners in the retail boot and shoe business, on the corner of First and Alder streets, as the successors of Holmes and Sunderland. That on the morning of January 9, aforesaid, Randall was found guilty by a jury in the United States court for the district, of a crime, punishable at least by ten years' imprisonment at hard labor, and that thereafter on the same day R. and S. by their writing under seal assigned, sold and transferred their entire property, consisting of stock in trade, store fixtures, and accounts, to John R. Foster, "for the benefit of all the creditors of said firm without distinction," and after the payment of said firm creditors, to be applied to the payment "of the individual debts of R. and S. according to their respective interests, that is to say, after the payment of the firm debts, the balance of the said property or the proceeds thereof, belongs to the said copartners in equal shares, and shall be so applied." The writing then authorizes and directs the assignee "to collect the said accounts and to manage said business, to sell and dispose of said goods according to his best discretion and judgment for the purposes aforesaid."

2. That the assignee executed the writing and accepted the trust, and took possession of the store and goods and carried on the business in the usual way—Sunderland remaining in the store—until the injunction was served upon him. The assignment did not state the names of any of the creditors of the firm, nor the amount separately or in the

aggregate of their claims; neither did it state the names of the individual creditors of the partners nor the amount of their individual indebtedness. Sunderland testified that he owed no individual debts. Foster, when being examined by the petitioner's counsel, testified that Randall told him that if he got what he was entitled to from the postoffice department, he thought it would pay his individual debts. An inventory of the goods, store fixtures and accounts is annexed to the assignment. The former were inventoried at their cost in San Francisco, with the freight to Portland added, and foot up $14,213.70. The store fixtures are lumped in, without any items, at $500. The sum of $156.50 is charged for premiums paid for insurance upon the goods. Sum total of value of goods, fixtures and insurance, $14,870.21. In addition to these, the inventory contains a list of accounts due the firm from about 190 different persons, the nominal value of which amounts to $2,256.80. Of these accounts what amounts to $104.25 are marked in the inventory as "doubtful."

The petition charges that R. and S. are indebted to merchants in San Francisco in the sum of about $12,000. Foster testifies that at the date of the assignment the indebtedness of the firm amounted to $13,000. The stock of goods on hand at date of assignment was a reasonably good one. There were, however, but few full packages. Most of them had been retailed from and some sizes and kind were lacking. The bulk of them was bought in August or September, 1868. Foster testifies that if the goods were put upon the market and sold at once for cash, that they would bring 30 cents on the dollar of the inventoried price, but that if he was allowed to carry on the business by keeping up the stock he could work them off so as to receive 100 cents on the dollar, and something more. Sunderland testifies, as to the cause of the assignment, that when Randall was found guilty and about to be imprisoned, that he thought he would protect his creditors by taking in a responsible party and making an assignment to him. He also testifies that on January 9 the goods were worth what they were inventoried at, and that they were sufficient to pay the debts of R. and S., but that if forced to sale for cash they would not bring 50 cents on the dollar of the inventoried price; that he did not know what the store fixtures were worth, and that as a general thing the accounts were a good lot and worth 75 cents on the dollar. Homer Sanborn, a merchant, testifies that he assisted to inventory the goods and that it is owing to circumstances whether they are worth the inventory price or not. Thought they were worth that to R. and S. Under the circumstances he would have been willing to take the goods and business and pay the debts of the firm. That he and John R. Foster were indorsers for R. and S. for $1,000.

Upon this state of facts the first question that arises in the consideration of the second alleged act of bankruptcy, is the solvency of the firm of R. and S. at the time of this assignment. A solvent man is one that is able to pay all his debts in full, at once or as they become due. Insolvency is merely the opposite of solvency. A man who is unable to pay his debts out of his own means, or whose debts cannot be collected out of such means by legal process, is insolvent—and this is so, although it may be morally certain that with indulgence from his creditors, in point of time, he may be ultimately able to satisfy his engagements in full. The term insolvency imports a present inability to pay. The probable or improbable future condition of the party in this respect does not affect the question. If a man's debts cannot be made in full out of his property by levy and sale on execution, he is insolvent within the primary and ordinary meaning of the word, and particularly in the sense in which the word is used in the bankrupt act. Burrill, Assignm. 38, 41; Herrick v. Borst, 4 Hill, 652; Buckingham v. McLean, 13 How. [54 U. S.] 167; Merchants' Nat. Bank of Hastings v. Truax [Case No. 9,451]; Foster v. Hackley [Id. 4,971].

Tried by this rule, I have no doubt but R. and S. were insolvent at the date of this assignment. The nominal value of their assets as set forth in the inventory, including goods, fixtures, accounts and insurance, is $17,127.01, and their debts, as testified by Mr. Foster, amount to $13,000. It is not probable that 75 cents on the dollar could be realized from this property upon legal process, and even this result would scarcely produce enough to pay the debts, not counting the expenses of sale, etc. It is more likely it would not fetch over 50 cents on the dollar. The goods had been called over at retail. The fixtures are not itemized in the inventory, and they probably have little, if any, value out of the store-room, and business in which they are used. The accounts, even if all of them were against solvent people, would scarcely pay 25 cents on the dollar after deducting the expenses of collection by legal process, and it is safe to conclude that they would not sell in open market for 50 cents on the dollar.

The parties being insolvent at the making of this assignment, did they make it with the intention to defeat or delay the operation of the bankrupt act? Every person is presumed to intend the natural and probable consequences of his own acts. This assignment attempts to vest the whole of the property of R. and S. in a trustee selected by them, for the purpose of equal distribution among all their creditors. If allowed to stand, one of the necessary consequences will be that the property of these insolvents will be prevented from coming to the assignee in bankruptcy and from being distributed among the creditors under the bankrupt act,

and so the operation of the act will be defeated. This natural, and not only probable, but necessary consequence of this assignment, the assignors must be presumed to have intended, unless they show to the contrary. As to this, the burden of proof is upon them.

The necessity of the provision in the act which makes void an assignment by an insolvent with intent to delay or defeat the act (section 35), and also the provision which declares such an assignment an act of bankruptcy (section 39), is apparent. Without them, the law could and would be successfully evaded to the injury of creditors. In addition, the justice and propriety of the act in this respect cannot be questioned. In good morals the property of an insolvent debtor belongs to his creditors. They being the primary and real parties in interest, are entitled to give direction in the settlement and distribution of the insolvent's estate, and to select the person to control and dispose of it for the common benefit. To secure this result is the purpose of the bankrupt act. The necessary consequence of this assignment, if allowed to stand, is to defeat this purpose, in this case, and therefore the law declares the making of it, an act of bankruptcy. It would seem, that in effect the act forbids any assignment by an insolvent or person in contemplation of insolvency for any purpose. True, an assignment made with the consent and accepted by all the creditors of the assignor, might be upheld, not because such assignments are expressly permitted by the law, but because the creditors would be bound by their acceptance and estopped from impugning the legality of an act, which had been done with their consent and approval.

My conclusion is, then, that the facts set forth in the petition as to the second act of bankruptcy are true. That the respondents, being insolvent, made this assignment with intent to defeat the operation of the bankrupt act, by preventing their property from coming to their assignee in bankruptcy, and to prevent the same from being distributed under the bankrupt act. This is a necessary consequence of the assignment, if allowed to stand, and no other purpose or object is shown or suggested for making it.

A single act of bankruptcy being proven, it is not necessary to consider the first charge in the petition that R. and S. made this assignment with intent to delay, or hinder, or defraud creditors. If, however, the respondents were solvent at the date of this assignment, as claimed by them, then in contemplation of law the assignment would have been made to delay, hinder and defraud creditors, because, if allowed to stand, such

would have been its operation and effect. An assignment by a solvent person for the benefit of creditors, with or without preferences, is void under the statute of frauds, because the necessary consequence of it is to delay and defraud creditors, by preventing them from subjecting their debtor's property by the ordinary legal proceedings and process to the satisfaction of their claims. Kellogg v. Slawson, 15 Barb. 57; Perry v. Langley [Case No. 11,006]; Burrill, Assignm. 33. Section 39 of the act makes an assignment, whether the assignor be solvent or insolvent, with intent to delay, hinder or defraud creditors, an act of bankruptcy. Upon the face of this assignment, the firm of R. and S. profess to be solvent, because they expressly provide for the disposition of the surplus of their property after paying their debts. Again, an assignment which authorizes the trustee or assignee to sell on credit, or in any manner to prolong his possession of the property beyond the time reasonably necessary to convert it into cash, and distribute it among the creditors, is void under the statute of frauds, and also an act of bankruptcy, because its necessary consequence is to delay and hinder creditors. This assignment leaves this matter to the judgment and discretion of the assignee, and even authorizes him "to manage the business" according to such judgment and discretion. The business of R. and S. was the retail trade in boots and shoes. If the assignee is "to manage" this as he thinks best, he may think best to carry it on for years, and continue to invest the proceeds of sales in new stock, instead of disposing of the stock and distributing the proceeds among the creditors, at once. Indeed, I infer from the testimony of Mr. Foster, that he had some such purpose in view. From the proceeds of the sales of the property, he had already purchased some new stock. He spoke of what he expected to realize for the stock on hand by disposing of it in the course of the business. This process might occupy several years. In the meantime, the assignee might prosper and make money for all concerned, or he might by misconduct or misfortune lose all that had been assigned to him, and leave the creditors without anything. In the meanwhile, and however the operation might result, the creditors would be delayed and hindered in the collection of their debts.

Judgment must be given declaring the respondents bankrupts upon the ground of the assignment of their property while insolvent, with the intent to defeat the operation of the bankrupt act.